UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ALDO LOPEZ,<br><br>    Defendant. | Case No. 12-cv-05784-SBA   (JCS)<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Dkt. No. 28 |

## I. INTRODUCTION

Plaintiff J & J Sports Production, Inc., ("J & J") brought this action under 47 U.S.C. § 605 and 47 U.S.C. § 553 alleging that Defendant Aldo Lopez, doing business as Taqueria Aguililla, unlawfully intercepted and displaced a broadcast to which J & J holds exclusive distribution rights. J & J also asserts state law claims for conversion and unfair business practices. Defendant did not appear and default was entered against him by the Clerk on June 13, 2013. J & J now brings a Motion for Default Judgment ("Motion") against Defendant. A hearing on the Motion was held on August 30, 2013, at 9:30 a.m. After the hearing, J & J submitted a supplemental declaration. For the reasons stated below, it is recommended that the Motion for Default Judgment be GRANTED.

## II. BACKGROUND

### A. The Complaint

J & J is a California corporation with its principal place of business located in Campbell, California. Dkt. No. 1 (Complaint) ("Compl.") ¶ 6. J & J filed the Complaint in this action on November 9, 2012. *Id*. In the Complaint, J & J alleges that Defendant is the owner of an establishment known as Taqueria Aguililla, which is located in Newark, California. *Id*. ¶¶ 7-8.

J & J alleges that by contract, it was granted exclusive national commercial distribution rights to *Manny Pacquiao v. Juan Manuel Marquez III WBO Welterweight Championship Fight Program, WBO Welterweight Championship Fight Program* telecast nationwide on Saturday, November 12, 2011 (hereafter "the *Pacquiao v. Marquez Program*").  Compl. ¶ 14.  Pursuant to the contract, J & J entered into sublicensing agreements with various commercial entities in California allowing them to publicly exhibit the *Pacquiao v. Marquez Program* to their patrons. *Id*. ¶ 15.  Plaintiff further alleges that it has expended "substantial monies" to transmit the *Pacquiao v. Marquez Program* to those entities.  *Id*. ¶ 16.

As alleged in the Complaint, Defendant unlawfully displayed the *Pacquiao v. Marquez Program* at Taqueria Aguililla, with full knowledge that the *Pacquiao v. Marquez Program* was not to be intercepted, received or exhibited by entities not authorized to do so, and "for the purposes of direct and/or indirect commercial advantage and/or private financial gain."  *Id*. ¶¶ 17-18.  The Complaint contains no allegation regarding the manner in which Defendant is alleged to have accessed the *Pacquiao v. Marquez Program*.

J & J asserts four claims in the Complaint: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business and Professions Code §§ 17200 *et seq*.  Plaintiff requests statutory damages in the amount of $110,000 for Defendant's alleged violation of 47 U.S.C. § 605, $60,000 for Defendant's alleged violation of 47 U.S.C. § 553, unspecified compensatory, exemplary and punitive damages on its conversion claim, and restitution and declaratory relief on its section 17200 claim.  Plaintiff also requests an award of reasonable attorneys' fees and costs.

**B.    The Motion**

In the Motion, J & J requests that the Court enter default judgment against Defendant and award $110,00 in statutory and enhanced damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and (ii), as well as an unspecified amount of damages for the tort of conversion.[1]

---

[1] Plaintiff does not seek attorneys' fees with this Motion.  Plaintiff has indicated that it will seek attorneys' fees within fourteen (14) days after the entry of judgment.

2

In support of the Motion, Plaintiff filed a Declaration of Affiant, in which the declarant, Mr. Martinez, writes that he visited Taqueria Aguililla on November 12, 2011 at 6:00 p.m., paid a $15 cover charge to enter, and observed two televisions in the establishment. Dkt. No. 28-3 (Declaration of Affiant). Mr. Martinez writes that one of the televisions was showing a fight between Mike Alvarado (who was wearing blue trunks) and Breidis Prescott (who was wearing white trunks). *Id*. Mr. Martinez noted that the capacity of the establishment was approximately ten (10) people, and that at two different times, he counted seventeen (17) and twenty-seven (27) patrons in the establishment.

The president of J &J, Joseph M. Gagliardi, also submitted a supplemental, sworn declaration after the hearing on the Motion. Dkt. No. 15 ("Gagliardi Decl."). Mr. Gagliardi explains that the fight between Mike Alvardo and Breidis Prescott, which Mr. Martinez observed, was an "under-card bout [which] was part of Plaintiff's proprietary program." *Id*. ¶ 9. Attached as Exhibit 1 to Mr. Gagliardi's declaration is the License Agreement, which states that J & J received an exclusive license to "Manny Pacquiao v. Juan Manuel Marquez (the "Bout") … Plus selected undercard bouts." Gagliardi Decl. Ex. 1 (License Agreement) at 1. Attached as Exhibit 3 to Mr. Gagliardi's declaration is a printout of an internet webpage which Mr. Gagliardi calls a "bout sheet." Gagliardi ¶ 9 and Ex. 3 thereto. On the "bout sheet," the fight between Mike Alvarado and Breidis Prescott appears under the fight between Manny Pacquiao and Juan Manual Marquez. *Id*., Ex. 3.

Mr. Gagliardi also explains in his declaration how it is virtually impossible to accidentally intercept a closed circuit program such as the *Pacquiao v. Marquez Program*. Mr. Gagliardi writes:
> If a commercial establishment was authorized by Plaintiff to receive the Program, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal or the establishment's cable or satellite provider would be notified to unscramble the reception of the Program for the establishment.

Gagliardi Decl. ¶ 7. Mr. Gagliardi further writes:
> In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action, such as an unauthorized decoder or satellite access card, obtaining

3

>cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Program into the establishment, or moving an authorized decoder or satellite card from its authorized location to the commercial establishment.  Defendant could not have obtained the transmission of the Program had Defendant not undertaken specific wrongful actions to intercept, receive and/or exhibit the telecast of the Program.

*Id.* ¶ 10.

Moreover, Mr. Gagliardi's declaration also shows that a sublicensing fee to display a program is based on the capacity of the establishment, and varies for each event.  Mr. Gagliardi writes that "for this particular event, if a commercial establishment had a maximum fire code occupancy of 10 persons, the commercial sublicense fee would have been $2,200.00."  Gagliardi Decl. ¶ 8.  Attached as Exhibit 2 to Mr. Gagliardi's declaration is the "rate card" for the *Pacquiao vs. Marquez Program*, and states that the rate for an establishment with minimum seating between zero and one hundred is $2,200.  *Id.*, Ex. 2.

## III.   DISCUSSION

### A.   Legal Standard − Default Judgment

After default has been entered against a party, a court may grant default judgment in its discretion.  If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, courts are instructed to consider several facts in determining whether to grant default judgment:

>(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence.  *See id.*

**B.     Merits of J & J's Claims**

**1.     Whether to Apply 47 U.S.C. § 605 or 47 U.S.C. § 553**

J & J asserts claims under both 47 U.S.C. § 605 and 47 U.S.C. § 553, but it seeks to recover only under the former provision, which allows for the award of higher statutory damages than does the latter.  Numerous courts in this district have addressed just such a request under similar circumstances and have concluded that Section 553 should be applied.  The undersigned agrees.

Section 553 prohibits a person from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator …."  47 U.S.C. § 553(a)(1).  In other words, that section prohibits unauthorized reception of cable programming.  Section 605 prohibits the unauthorized reception of programming by "wire or radio."  47 U.S.C. § 605(a).  Judge Whyte, of this district, explains that "[a] single pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast.  But he cannot violate both by a single act of interception."  *J & J Sports Productions, Inc. v. Manzano*, No. 08-1872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).  It follows that where, as here, a plaintiff alleges only one act of unlawful interception, but asserts two claims under both Section 553 and Section 605, the plaintiff should only prevail on only one of the claims.

Where a plaintiff seeking default judgment is unable to determine whether a defaulting defendant intercepted a cable signal or a satellite broadcast, judges in this district have reasoned that Section 553 should be applied rather than Section 605 because "cable boxes are more easily hidden and more likely to be the source of transmission."  *J & J Sports Productions, Inc. v. Basto*, No. 10-5122, 2011 WL 2197756, at *3 (N.D. Cal. June 6, 2011) (Hamilton, J.) (holding on a motion for default judgment that "[b]ecause neither a cable box nor satellite dish was visible at defendants' establishment, the court follows the reasoning of other judges in this district who have entered judgment and awarded damages under Section 553 rather than Section 605 based on the understanding that cable boxes are more easily hidden than satellite dishes and more likely to be the source of transmission."); *see also J & J Sports Productions, Inc. v. Mosley*, No. 10-5126,

2011 WL 2066713 (N.D. Cal. April 13, 2011) (Chen), report and recommendation adopted, 2011 WL 2039374 (Wilken, J.) (same); *J & J Sports Productions, Inc. v. Guzman*, No. 09-5124, 2010 WL 4055934, at *2 (N.D. Cal. October 14, 2010) (Fogel, J.) (same); *J & J Sports Productions, Inc. v. Man Thi Doan*, No. 08-0324, 2008 WL 4911223, at * 3 (N.D. Cal. Nov. 13, 2008) (Whyte, J.) (same); *J & J Sports Productions, Inc. v. Ro*, No. 09-2860, 2010 WL 668065, at * 3 (N.D. Cal., Feb. 19, 2010) (Alsup, J.) (applying Section 553 over Section 605 and further noting that if plaintiff had wanted to prove a violation of Section 605 based on interception through a wire or radio, it could have filed a third-party subpoena or requested an order for inspection).

The undersigned finds the reasoning of these cases persuasive. There are no allegations in the Complaint that indicate how the Program was transmitted. Unlike the situation in many other cases, the investigator's affidavit does not state whether there was a satellite dish or a cable box at the establishment. Thus, the Court concludes that Plaintiff has established liability only under Section 553, and not under Section 605.

### 2. The Conversion Claim

A conversion claim requires "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). As Plaintiff's allegations must be accepted as true, they support the three elements of a conversion claim. In particular, Plaintiff alleges that it owns exclusive distribution rights to the Program, that Defendant displayed the program without authorization, and that Defendant would have had to pay J & J for a sublicense to display the program. Plaintiff has therefore sufficiently pled a claim for conversion.

### 3. Section 17200 Claim

Although J & J included an unfair competition claim in the Complaint, it did not address that claim in the Motion, nor did it request an award of damages on the claim. Accordingly, it is recommended that the Section 17200 claim be dismissed with prejudice.

### C. Remaining *Eitel* Factors

The remaining *Eitel* factors, on balance, support entry of default judgment on J & J's section 553 and conversion claims. While there is a strong policy favoring decision of cases on

the merits, that policy consideration is outweighed here by the prejudice that would result from denial of default judgment, which would leave J & J without a remedy. *See Basto,* 2011 WL 2197756, at *3. Although the amount of money at stake is not insignificant, this factor does not weigh against entry of default judgment, as the amount proposed by the undersigned is proportionate to the damages suffered and the need for deterrence of piracy. Finally, the factual issues in this case are relatively straightforward and there is no indication that Defendant's failure to appear is due to excusable neglect. Thus, consideration of the *Eitel* factors weighs in favor of entering default judgment.

### D.     Damages

J & J seeks statutory damages under Section 605, which authorizes a court, upon finding a violation of 47 U.S.C. 605(a), to award a sum "not less than $1,000 or more than $10,000" for each violation, as well as up to $100,000 if the violation was willful. 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii). As discussed above, however, J & J has not established liability under Section 605, and rather has only established liability under Section 553. Under Section 553, a court may award statutory damages "in a sum of not less than $250 or more than $10,000" for each violation, as well as up to $50,000 if the violation was willful. 47 U.S.C. § 553(c)(3)(A)(2)(ii), (B). Defendant also requests damages on his conversion claim.

#### 1.     Statutory Damages under Section 553

"In its analysis of appropriate statutory damages, the Court may consider the cost of a commercial license for the program at issue …, Defendant's incremental profits, and the need to deter piracy." *Mosley,* 2011 WL 2066713, at *5 (N.D. Cal. April 13, 2011), *report and recommendation adopted*, 2011 WL 2039374; *see also Joe Hand Promotions, Inc. v. Be*, No. 11-1333-LHK, 2011 WL 5105375, at *4 (N.D. Cal. Oct. 26, 2011) ("A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants.") (quotations omitted). In determining statutory damages to award under Sections 605 or 553, courts in this district "consider a number of factors, including: whether defendant imposed a cover charge; whether the defendant increased the price of food or drink; the presence of advertising; the number of patrons; the number of televisions used; whether the

7

Defendants are repeat offenders; and the actual cost of a license." *J & J Sports Productions, Inc. v. Mujadidi*, No. 11-5423-YGR (JCS), at 6 (N.D. Cal. Nov. 14, 2012) (citations omitted).

In this case, J & J has submitted evidence that Defendant would have purchased a sublicense for $2,200 given the establishment's capacity of ten people. *See* Gagliardi Decl. ¶ 8 and Ex. 2. Thus, $2,200 reflects the losses incurred by Plaintiff. J & J argues, however, that awarding only the amount of the licensing fee is insufficient because it fails to deter Defendant and others from engaging in similar, unlawful conduct. *See* Motion at 7-8. J & J has submitted evidence that its agent paid a $15 cover charge to enter and undertook two headcounts in which he counted seventeen and twenty-seven people. Dkt. No. 28-3 (Declaration of Affiant). Thus, J & J has proved that Defendant received at least $405 in cover charge revenue through its unlawful interception of the Program. However, J & J has not submitted any evidence that Defendant advertised the event, charged a premium on food or drink, has engaged in similar conduct in the past.

The undersigned recommends an award of statutory damages in the amount of $2,800. This amount reflects the $2,200 sublicense fee, the $405 in cover charge revenue, and some additional, incremental profits made by Defendant. This award is also consistent with decisions in analogous cases from this district. In *J & J Sports Authority, Inc. v. Napuri*, the court adopted the magistrate judge's recommended award of statutory damages under Section 605 in the amount of $2,200, which was the amount of the licensing fee. No. 10-4171-SBA (LB), 2013 WL 1739520, at *2 (N.D. Cal. April 22, 2013); *see also J & J Sports Prods., Inc. v. Bonilla*, 2011 WL 1344346, at *2 (N.D. Cal April 8, 2011) (awarding $2,200 in statutory damages under Section 605 based on the sublicense fee); *Mosley*, 2011 WL 2066713, *report and recommendation adopted*, 2011 WL 2039374 (awarding $2,500 in statutory damages under Section 605 in light of "the modest number of patrons and the lack of a cover charge, … plus some margin for profits earned by J & J from the event."). In this case, the undersigned recommends a slightly higher award based on the cover charge and the fact two televisions were broadcasting the program. However, this award is lower than other cases where there was evidence of a larger establishment, more patrons, and/or previous unlawful conduct of similar nature. *See, e.g.*, *J & J Sports Prods. v. Basto*, 2011 WL 2197756, at

*5 (awarding $5000 in statutory damages when the sublicensing fee was $4,200 and the capacity of the establishment was 150 people); *J & J Sports Productions, Inc. v. Mujadidi*, No. 11-5423-YGR (JCS) (N.D. Cal. Nov. 14, 2012), Dkt. No. 19 at 6 (adopting recommended award of $4,200 in statutory damages under Section 553 based on the $2,200 licensing fee and evidence that the defendant was a repeat offender).

### 2. Enhanced Statutory Damages under Section 553

Under Section 553, a court may award enhanced damages up to $50,000 if the violation was willful. 47 U.S.C. § 553(c)(3)(B). In this case, J & J has submitted evidence establishing that Defendant's conduct was willful. *See* Gagliardi Decl. ¶¶ 7-10. J & J requests the court to award the maximum amount of enhanced damages, and cites authority from outside this district supporting a high award of enhanced damages. Nevertheless, "[i]n this district, courts have typically awarded less than the statutory maximums." *Mosley*, 2011 WL 2066713, at *6, *report and recommendation adopted*, 2011 WL 2039374; *see also Napuri*, 2013 WL 1739520, at *3 ("In this Court's view, Plaintiff's demand for the statutory maximum of $10,000 in statutory damages and $100,000 in enhanced statutory damages is exorbitant, and wholly disproportionate to the offense."). Therefore, the undersigned recommends an award of $2,200 in enhanced damages, which is consistent with analogous cases. *See Napuri*, 2013 WL 1739520, at *3 (awarding $2,500 in enhanced damages); *Bonilla*, 2011 WL 1344346, at *2 (awarding $2,200 as a reasonable enhancement when there were 3 - 10 patrons and no cover charge); *Mosley*, 2011 WL 2066713, at *6, *report and recommendation adopted*, 2011 WL 2039374 (award of $2,500); *Basto*, 2011 WL 2197756, at *1 (awarding $2,000 in enhanced damages).

### 3. Damages for Conversion

In addition, J & J is entitled to damages on its conversion claim. If Defendant has sublicensed the *Pacquiao v. Marquez Program* from J & J, Defendant would have paid $2,200. *See* Gagliardi Decl. ¶ 8 and Ex. 2 thereto. Accordingly, it is recommended that Plaintiff be awarded an additional $2,200 in damages on the conversion claim−"the price for a commercial establishment to broadcast the program through J & J." *J & J Sports Prods. v. Coyne*, 857 F. Supp. 2d 909, 919 (N.D. Cal. 2012).

9

## IV. CONCLUSION

For the foregoing reasons, it is recommended that the Motion for Default Judgment be GRANTED and that Plaintiff be awarded $7,200 in total damages, which consists of: 1) $2,800 in statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii); 2) $2,200 in enhanced statutory damages under 47 U.S.C. § 553(c)(3)(B); and 3) $2,200 in damages for conversion. Any objections to this Report and Recommendation shall be filed within fourteen (14) days within the date of this Report and Recommendation.

Dated: October 17, 2013

JOSEPH C. SPERO
United States Magistrate Judge