UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ALDO LOPEZ, individually and d/b/a TAQUERIA AGUILILLIA,<br><br>　　　　Defendant. | Case No:  C 12-5784 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT** |

　　This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s, Motion to Alter or Amend Judgment. Dkt. 42. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

**I.　BACKGROUND**

　　Plaintiff owns the commercial distribution rights to <u>Manny Pacquiao v. Juan Manuel Marquez III WBO Welterweight Championship Fight Program</u> ("the Program"), a pay-per-view fight which was telecast nationwide on Saturday, November 12, 2011. On that date, Defendant Aldo Lopez, individually and doing business as Taqueria Aguilillia ("Taqueria"), displayed the Program at the Taqueria without authorization. According to the fill-in-the-blank form affidavit signed by Plaintiff's undercover investigator, the investigator paid a $15 cover fee to enter the Taqueria at 6:00 p.m. on November 12, 2011.

Dkt. 28-3.  The investigator indicated that the establishment has a capacity of ten people, though he claimed to have observed seventeen patrons during his first head count and twenty-seven on the second.  Id.  The affidavit does not specify the number of persons present when the investigator entered the Taqueria, whether anyone other than himself paid a $15 cover charge, whether Taqueria typically charges a cover fee on Saturday evenings, whether Defendant marketed the event or increased food and beverage prices, or whether he is a repeat offender.  Dkt. 40 at 2-3.

   Almost a year after the Program was broadcast, Plaintiff filed the instant action against Defendant based on his unauthorized display of the Program.  The Complaint alleged claims, inter alia, for violations of the Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992 ("Cable Act"), 47 U.S.C. § 553, and for conversion.  Defendant failed to answer the Complaint, which resulted in his default being entered.  Dkt. 25.  Thereafter, Plaintiff filed a motion for default judgment seeking a judgment in the amount of $112,200 based on its claims for violation of the Communications Act and for conversion.  Dkt. 28-1 at 8.  More specifically, Plaintiff requested the maximum amount of statutory damages ($10,000) and enhanced damages ($100,000) under § 605, and the cost of the sublicense for the Program ($2,200).  Id. at 8-9.

   The Court referred Plaintiff's motion for default judgment to a Magistrate Judge ("Magistrate") for a report and recommendation, in accordance with 28 U.S.C § 636(b)(1)(B).  Dkt. 28.  On March 7, 2013, the assigned Magistrate issued a Report and Recommendation Re Motion for Default Judgment in which he recommended granting Plaintiff's motion.  Dkt. 37.  The Magistrate began his analysis by noting that Plaintiff's request for damages should be construed under the Cable Act, § 553, and not the Communications Act, § 605.  Id. at 5.  He then awarded $2,800 in statutory damages, which "reflects the $2,200 sublicense fee, the $405 in cover charge revenue, and some additional, incremental profits made by Defendant."  Id. at 8.  Finding that Defendant's conduct was "willful," the Magistrate awarded an additional $2,200 in enhanced damages.  Id. at 9.

1  Finally, the Magistrate awarded $2,200 in conversion damages to cover the cost of the
2  sublicense fee. Id.
3        Plaintiff timely filed Objections to the Report and Recommendation and a related
4  Motion for De Novo Determination Re Plaintiff's Motion for Default Judgment.  Dkt. 39.
5  In particular, Plaintiff objected that $2,800 in statutory damages and $2,200 in enhanced
6  damages collectively were too low to deter Defendant from future unauthorized displays of
7  licensed programming, and requested an increase to an unspecified amount.[1]  The Court
8  rejected Plaintiff's arguments, and accepted the Magistrate's recommendation with respect
9  to the $2,800 statutory damage award under § 553. Dkt. 40.  However, due to Plaintiff's
10 deficient evidentiary showing, the Court awarded no enhanced damages.   The Court
11 further concluded that no conversion damages were warranted in light of Plaintiff's
12 recovery of statutory damages, which necessarily compensated Plaintiff for the cost of the
13 Program sublicense.  Accordingly, the Court overruled Plaintiff's objections to the Report
14 and Recommendation, granted its motion for default judgment and awarded $2,800 in
15 damages against Defendant.  Plaintiff now moves for reconsideration of that ruling.

**II.   LEGAL STANDARD**

      A district court has the discretion to reconsider a prior order. Sch. Dist. No. 1J v. ACandS, Inc., Multnomah Cnty., Or., 5 F.3d 1255, 1262 (9th Cir. 1993).  "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Id. at 1263.  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).  A district court has "considerable discretion" in considering a Rule 59(e) motion. Turner v. Burlington N. Santa Fe R.R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003).

---

[1] In its motion for default judgment, Plaintiff requested the maximum amount of damages allowable by statute.  In its objections, however, Plaintiff stated that it was not seeking a maximum damage award.

## III. DISCUSSION

Under the Cable Act, a party may be awarded statutory damages "in a sum of not less than $250 or more than $10,000 *as the court considers just*."  47 U.S.C. § 553(c)(3)(A)(ii) (emphasis added).  "In determining the appropriate amount of statutory damages, the court may consider the cost of the commercial license to exhibit the program at issue, the defendant's incremental profit from the use of the program, the number of patrons at the establishment[,] and the need to deter piracy."  Joe Hand Prods. v. Mujadidi, No. C 11-5570 EMC, 2012 WL 3537036, at *5 (N.D. Cal. Aug. 14, 2012).  A district court has the discretion to award enhanced damages of up to $50,000 where the violation "was committed willfully and for purposes of commercial advantage or private financial gain[.]" 47 U.S.C. § 553.  "Because the Ninth Circuit has not provided guidance on how to determine 'enhanced' damages, district courts have taken into account a variety of factors, including the use of a cover charge, an increase in food price[s] during programming, the presence of advertisement[s], the number of patrons, the number of televisions used, the impact of the offender's conduct on the claimant, and whether defendant is a repeat offender."  G & G Closed Circuit Events, LLC v. Espinoza, No. C 12-6349 CRB, 2013 WL 4520018, at *4 (N.D. Cal. Aug. 23, 2013).

Plaintiff argues that a total damage award of $2,800 is insufficient to deter piracy because "it puts Defendant back in the same position he would have been had he not pirated the Program in the first place."  Dkt. 42 at 6.  This is incorrect.  The award is $600 greater than the sublicense fee of $2,200, and effectively disgorges Defendant of any potential profit resulting from his unauthorized display of the Program.  While the Court could have awarded a greater amount of damages, it chose not to do so, given the paucity of competent evidence presented.  The form affidavit prepared by Plaintiff's investigator indicated that he paid a $15 cover charge and that up to 27 patrons were present at the Taqueria while he was there.  However, the investigator did not indicate the number of persons present when he entered the Taqueria, whether anyone other than himself paid a $15 cover charge, whether the Taqueria typically charges a cover fee on Saturday evenings, whether more

patrons were present than usual, whether Defendant marketed the event or increased food and/or beverage prices, or whether Defendant is a repeat offender. As such, whether Defendant displayed the Program for the purpose of benefitting and actually benefitted from showing the Program was not clearly established.

In his motion for reconsideration, Plaintiff acknowledges the lack of evidence establishing a nexus between Defendant's unauthorized display of the Program and his alleged benefit therefrom, but submits that "a more reasonable conclusion" to draw from the record is that *all* patrons, and not just the investigator, paid the fee. Id. at 8 n.2. However, before entering a default judgment, a court must ensure that there is a competent evidentiary basis for a particular damage award. To assume that all patrons paid a cover fee simply because the investigator paid one, without more, would be entirely speculative and otherwise circumvent Plaintiff's burden to provide the requisite factual and evidentiary predicate for a damages award. See Hupp v. Jones, 474 Fed. Appx. 601, 601-602, 2012 WL 2859926 (9th Cir. July 12, 2012) ("The district court did not abuse its discretion in awarding a default judgment of $1,000 in nominal damages for Hupp's defamation claim, because Hupp did not sufficiently prove that he was entitled to a greater amount of damages."); House v. Kent Worldwide Machine Works, Inc., 359 Fed. Appx. 206, 207, 2010 WL 10020, at *1 (2d Cir. 2010) ("even when the defendant defaults and is not present to object, damages must be based on admissible evidence."); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (noting that the Court has "considerable leeway" in deciding the prerequisites for the entry of a default judgment).[2]

Plaintiff also contends that the Court erred in deciding against awarding any damages on its conversion claim. Dkt. 42 at 9. As noted, the Magistrate had proposed awarding Plaintiff $2,200 in damages for conversion to compensate Plaintiff for the

---

[2] Plaintiff also suggests that the Court misconstrued his damage request as seeking a *maximum* statutory and enhanced damage award, when, in fact, he had retreated from such a request. Dkt. 42 at 5. However, whether or not Plaintiff was requesting a maximum damage award was inapposite to the Court's analysis. Rather, the Court looked only to the applicable legal standards cited in the Order and the evidentiary showing posited by Plaintiff.

1  sublicensing fee. Dkt. 37 at 9. Though Plaintiff did not object to this recommendation, the
2  Court reviewed the matter sua sponte and concluded that such an award was duplicative of
3  the statutory damage award, which took into account such fee. Dkt. 40 at 7.[3] In the course
4  of its discussion, the Court cited Judge Illston's decision in J & J Sports Productions, Inc. v.
5  Parayno, No. C 12-2223 SI, 2012 WL 3277279 (N.D. Cal. Aug. 10, 2012) ("Parayno I"), in
6  which she declined to award damages on the plaintiff's conversion claim because she was
7  already awarding plaintiff $5,200 in statutory damages. Id. at *1; see also J & J Sports
8  Prods., Inc. v. Parayno, No. C 11-5434 JST, 2013 WL 5800587, at *5 (N.D. Cal. Oct. 28,
9  2013) (refusing to award damages for conversion where the cost of the $2,200 licensing fee
10 was covered by the $2,200 statutory damage award).

11       Plaintiff now argues that, under Parayno, a court may dispense with an award of
12 conversion damages only where the *aggregate* damage award is sufficient to cover the cost
13 of the sublicense at issue and promote deterrence. The Court is not persuaded. The general
14 measure of damages for conversion is the *value of the property* at the time of the
15 conversion plus the resources spent to recover the property. Civ. Code, § 3336. Here, the
16 value of the "property" is the cost of a sublicense. That cost is already a component of a
17 statutory damage award under the Cable Act. See Mujadidi, 2012 WL 3537036, at *5. As
18 such, a further award of conversion damages based on the cost of the sublicense would
19 have been duplicative. Moreover, there is no indication in Parayno I that *the amount* of the
20 award for statutory damages *in relation to* the sublicensing fee had any bearing on Judge
21 Illston's decision to not award damages for conversion. To the contrary, the court
22 questioned whether an intangible property right such as an exclusive right to distribute a
23 broadcast signal is the proper subject of a conversion claim in the first instance. Parayno I,
24 2012 WL 3277279, at *1. In sum, the Court finds no clear error or manifest injustice in
25 declining to award damages for conversion under the facts of this case. E.g., J & J Sports

---

[3] Under § 636, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

- 6 -

Prods., Inc. v. Parayno, No. C 11-5434 JST, 2013 WL 5800587, at *5 (N.D. Cal. Oct. 28, 2013) (refusing to award damages for conversion where the cost of the $2,200 licensing fee was covered by the $2,200 statutory damage award).

## IV.   CONCLUSION

Plaintiff has not shown that any material change in facts or law has occurred or that the Court's damage award is manifestly unjust or amounts to clear error.  Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's Motion to Alter or Amend the Judgment is DENIED.

IT IS SO ORDERED.

Dated:  March 25, 2014

SAUNDRA BROWN ARMSTRONG
United States District Judge